## WIMPFHEIMER v. UNITED STATES.

(Circuit Court, S. D. New York. November 2, 1905.)

### No. 3,006.

CUSTOMS DUTIES—CLASSIFICATION—FIGURED SILKS—SWIVEL THREADS—"FILLING."

In regard to a fabric of two colors, one of which is produced by threads introduced by the swivel process to form figures, and not extending across the cloth from selvage to selvage, *held*, that the swivel threads are not a part of the filling, and that the goods are not within the provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule L, par. 391, 30 Stat. 187 [U. S. Comp. St. 1901, p. 1670], for Jacquard figured silks containing two or more colors "in the filling."

On Application for Review of a Decision of the Board of United States General Appraisers.

Note Mills v. U. S., 114 Fed. 257, 52 C. C. A. 92, and H. B. Claflin Co. v. U. S., 114 Fed. 259, 52 C. C. A. 94.

142 F.—54

. These proceedings relate to a decision of the Board of General Appraisers which affirmed the assessment of duty by the collector of customs at the port of New York on merchandise imported by A. Wimpfheimer & Co. The opinion of the Board, so far as relevant, reads as follows (G. A. 4,542, T. D. 21,569):

"TICHENOR, General Appraiser. The goods in controversy are figured silk fabrics, about 17 inches and upward in width and 20 yards or more in length, and are of the class chiefly known in trade as necktie silks. They were assessed for duty at specific rates, according to weight, percentage of silk, etc., under the provisions of Tariff Act July 24, 1897, c. 11, § 1, Schedule L, par. 387, 30 Stat. 186 [U. S. Comp. St. 1901, p. 1669], and are claimed to be dutiable under the provision in paragraph 391 of said act (30 Stat. 187 [U. S. Comp. St. 1901, p. 1670]) for 'all Jacquard figured goods in the piece, made on looms, of which silk is the component material of chief value, dyed in the yarn, and containing two or more colors in the filling.' The goods are unquestionably woven fabrics in the piece, and are dutiable as such, unless otherwise more specifically provided for in the act. The provision for 'manufactures of silk not specially provided for' is less specific, and the claim thereunder may be dismissed without further comment. The only remaining question is whether they are 'Jacquard figured goods in the piece,' etc. If they are within that provision, they are dutiable under it, since it is not limited by the expression 'not specially provided for,' and it is more specific than the provision for 'woven fabrics in the piece,' which is so limited.

"These facts are undisputed: (1) That the goods are composed wholly or in chief value of silk; (2) that they are dyed in the yarn; (3) that they are not composed in part of wool; (4) that they are made on looms and are figured. The points in controversy are: (1) Are they Jacquard figured goods? (2) If so, have they two or more colors in the filling?

"Jacquard goods take their name from the inventor of the Jacquard loom attachment, and it appears that the expression 'Jacquard figured goods' has no particular technical meaning in commerce, but relates simply to goods figured by means of the Jacquard device. In weaving plain fabrics a portion of every alternate warp thread is raised; the corresponding portion of the others being depressed, thus forming what is called the 'shed.' A filling thread then passes from side to side in the space between the raised and depressed warp threads, and is then driven or pressed close up to the part of the fabric already woven. The 'shed' is then reversed, the raised threads being depressed and the depressed threads raised, when the filling thread passes through again in the opposite direction; and so the operation is repeated continuously. If, in weaving such plain fabric, the warp threads are of one color and the filling threads of another, the result is a mixture of color throughout the fabric. Stripes across the fabric are formed by a shuttle carrying a filling thread of one color until the desired width of such color or stripe is woven, when another shuttle is introduced carrying a thread of a different color, and this shuttle may in turn be displaced by others, each having its own color of thread, thus employing any number of shuttles desired. The warp may also be so arranged in different colors as to produce longitudinal stripes, or plaids. These variations of color, although involving the use of more than one shuttle, are produced on plain looms operating one shuttle at a time. Such other effects as twills, diagonals, and the like are also produced on plain looms. This cursory reference to the processes in weaving plain fabrics is merely introductory to consideration of the method of weaving such goods as these in question here.

"We will now consider, for illustration, a fabric in which all the warp threads are of one color and all the filling threads of another. If the warp threads are raised or depressed in groups, instead of singly, the process of weaving being otherwise the same as in plain fabrics, the colored filling threads appear on the surface continuously for distances corresponding to the grouping of the warp threads, because the shuttle, when passing through, carries a filling thread over all the groups of warp threads that have been depressed and under all such groups as have been raised. If the grouping of the warp threads remains the same, the result is a stripe running the length

of the goods. By altering the arrangement of groups of warp threads, however, each time the filling thread passes through any desired figure may be formed on the surface; such figure appearing on the back in the warp threads, while it appears on the front in the filling threads, or vice versa.

"Jacquard's invention was an apparatus for automatically raising groups of warp threads and changing the grouping with every transmission of the filling thread in such manner as to execute a prearranged design. In these Jacquard goods the warp and filling threads, which are essential elements of a woven fabric, are so manipulated as to form the figures; no other threads being added. If this method should be employed in weaving a fabric of quite light weight and color with isolated figures of dark color, the dark threads, extending from figure to figure on the back, would show through to such extent on the front as to render the goods unmerchantable. In such cases, therefore, a device called the 'swivel attachment' is used, and the fabrics are called 'swivel goods.' In some particulars the swivel operates in the same way as the Jacquard attachment, namely, in raising groups of warp threads, and in the movement at right angles to the warp of the shuttle or swivel which inserts the figure threads. In other respects its operation is substantially different. In the use of the swivel device each figure has its own shuttle or swivel, which travels back and forth over the space occupied by the figure only. When each swivel has inserted one thread of its figure, the next filling thread of the fabric is brought up to hold it in place. This process is repeated until the figure is complete, when the swivel ceases operating until the position for the next figure is reached. The Jacquard attachment (as used in the goods here in question) has no shuttle other than the regular shuttle of the loom, carrying the filling and forming the plain fabric when the attachment is at rest. The swivel attachment may have almost any number of shuttles or swivels, and must have one for every longitudinal row of figures. These are additional to the shuttle of the plain loom.

"The difference in effect may be readily observed in a completed fabric. The thread of the swivel zigzags through the figure until it is completed, running in the same direction—parallel to the filling—on both sides of the fabric, except at the edges of the figure, where the turn is made. An end of the swivel thread is found at each extremity of the figure, and it may be picked out and the figure removed without destroying or seriously injuring the fabric. The threads of the Jacquard figures are, on the contrary, essentially necessary to the formation and existence of the fabric, and can only be removed by unraveling the fabric and reducing it to the threads of which it is composed. The shape of the figure appears on the back of the Jacquard goods in the threads crossing those on the face, but in the swivel goods the threads run the same way on both sides. It appears that goods may be woven on a loom with either a Jacquard or with a swivel attachment alone, or with both combined.

"We find as a matter of fact: * * * (6) That the remainder of the goods in question are combinations of the Jacquard and swivel—that is to say, some of the figures in them are produced by the Jacquard attachment and some by the swivel device; that in these goods the filling threads, which also form the Jacquard figures, are all of one color, and the threads which form the swivel figures are of a different color in each instance. * * * We are of opinion that the goods covered by our sixth finding fall within the description 'Jacquard figured goods in the piece, made on looms,' since the Jacquard figures in them are a prominent feature, and the addition of the swivel figures is not sufficient to remove them from that class. But do they fulfill the other requirement of the law, namely, have they two or more colors in the filling? This resolves itself practically into the question whether the swivel threads are 'filling,' within the meaning of that term as used in paragraph 391, because, if the swivel threads are not included, the filling is all of one color, including the Jacquard figures, but if the swivel threads are included, then there are two colors in the filling. The word 'filling,' in its ordinary sense, means something that fills. In weaving it is synonymous with 'weft,' and relates to the threads that fill the interstices in the warp, and thus form the fabric. Such threads run from edge to edge or from selvage to selvage of

the fabric. Consequently there is an appropriateness in referring to the Jacquard goods as having 'two or more colors in the filling,' as the figures in such goods are composed strictly of filling threads, running from one edge to the other, filling the warp and constituting an essential part of the fabric, although serving the purpose of an ornament as well. The swivel threads, on the contrary, are solely for the purpose of ornamentation. They are inserted side by side with the filling, and are additional to it. The warp is 'filled' without them.

"The foregoing discussion relative to Jacquard goods has reference to silk fabrics of the kind here in question. In Jacquard cotton goods an extra shuttle is sometimes used—and in instances, perhaps, more than one—for the purpose only of carrying threads of different colors. This extra shuttle moves entirely across the fabric, and inserts the thread additional to the ordinary filling threads. These additional threads extend loosely from figure to figure on the back of the fabric, and are afterwards trimmed off. This method does not appear to be employed in silk goods, but in them the thread forming the Jacquard figure is the regular filling thread, and remains in the fabric throughout its width, and is not clipped off. Cotton goods, ornamented by means of the swivel attachment, were the subject of the decision of the Circuit Court of Appeals in the case of U. S. v. Albert, 60 Fed. 1012, 9 C. C. A. 332, 20 U. S. App. 599. While the court does not designate them by the name 'swivel,' it is apparent from the description quoted by the court from the appellant's brief that the goods were of that character. The court there says: 'The threads which compose these figures are not a part of the filling. They are additional to the filling, and the piece would be perfect without them.' In the case of Hedden v. Robertson, 151 U. S. 520, 14 Sup. Ct. 434, 38 L. Ed. 257, we have a decision of the Supreme Court on Jacquard cotton goods (not swivel). In this case the court said: 'These figures or patterns were woven into the groundwork by means of a machine called the "Jacquard attachment." When the fabric was taken from the loom, it was not in a finished state. The threads forming the weft or filling, furnished by the Jacquard attachment (used entirely for the figures or patterns), loosely connected the figures in a horizontal line, and were raised above the smooth surface of the groundwork. In order to bring out the figure or pattern more distinctly, the whole fabric was run through a clipping machine two or more times, and the loose threads, together with the raised parts of the pattern, were cut off, so as to make the fabric smooth and even.'

"The court calls the Jacquard threads 'filling threads,' but says they are used entirely for the figures or patterns, so that there must be another filling thread for the groundwork. As the Court of Appeals cited this case, it must be presumed that it fully appreciated the difference, because it designated 'swivel threads' as additional to the filling, although the Supreme Court had designated Jacquard threads as filling. Although there is a distinction between the method of production of the Jacquard figures in the Robertson Case and those here in question, there is no distinction between the method of production of the swivel figures in the Albert Case and the swivel figures in these cases. The only difference is in the material.

"We accordingly hold that the goods covered by our sixth finding are dutiable as assessed, and overrule the protest relative thereto."

Curie, Smith & Maxwell (W. Wickham Smith, of counsel), for importers.

D. Frank Lloyd, Asst. U. S. Atty.

HAZEL, District Judge. The importation relates to Jacquard silk. An examination of the question involved induces the conclusion that the filling in the importation extends from selvage to selvage, and that there is but one color therein. As claimed by counsel for the United States, the weft or filling in question to form the fabric completely fills the interstices in the warp, and the blue-colored thread, a so-styled

swivel thread, is woven in the filling for the purpose of beautifying the appearance of the article, and is additional to the filling. Hence Act July 24, 1897, c. 11, § 1, Schedule L, par. 391, 30 Stat. 187 [U. S. Comp. St. 1901, p. 1670], does not apply, as claimed by the importer. And the duty assessed by the collector and approved by the Board of General Appraisers was proper. So ordered.